**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                                          |   |                        |
|------------------------------------------|---|------------------------|
| **RAMESH SHARMA,**                       ) |                        |
|                                          ) |                        |
| **Plaintiff,**                           ) |                        |
|                                          ) |                        |
| v.                                       ) | **Civ. No. 03-1769 (TFH)** |
|                                          ) |                        |
| **WASHINGTON METROPOLITAN**              ) |                        |
| **AREA TRANSIT AUTHORITY, et al.,**      ) |                        |
|                                          ) |                        |
| **Defendants.**                          ) |                        |

## MEMORANDUM OPINION

Plaintiff Ramesh Sharma filed this action asserting claims for breach of contract and tortious interference. He also brings claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). He alleges that defendants discriminated against him and retaliated against him by mistreating him in the workplace, refusing to retain him as an independent contractor, thwarting his efforts to obtain employment references from his former supervisors, and interfering with the calculation of his monthly retirement pension benefit. His breach of contract and tortious interference claims are based on the same factual allegations. Before the Court are defendants' Motion for Summary Judgment, plaintiff's Cross-Motion for Partial Summary Judgment, the oppositions and replies thereto, and the entire record of this case. For the reasons set forth below, the Court DENIES plaintiff's Cross-Motion for Partial Summary Judgment and GRANTS defendants' Motion for Summary Judgment in its entirety.

## I. Background

It would be something of an understatement to say these parties have an extensive litigation history. In 1984, plaintiff and the Washington Metropolitan Area Transit Authority ("WMATA") reached a settlement agreement with respect to claims of discrimination plaintiff had asserted. Mem. Op., *Sharma v. Washington Metro. Area Transit Auth.*, 94-cv-305 (TFH) at 2 (D.D.C. Oct. 10, 2000). Five years later, plaintiff filed two additional claims of discrimination with the Equal Employment Opportunity Commission, which the parties also settled. *Id.* Another claim of discrimination followed in 1993, which culminated in a lawsuit filed in 1994. *Id.* at 3. The parties devised a mutually acceptable Agreement in Principle resolving that litigation ("Settlement Agreement") in November 2001. Compl. ¶ 10. Under the terms of the Settlement Agreement, plaintiff agreed to resign from WMATA. Pl.'s Amended/Corrected Opp. Defs.' Mot. Summ. J. and Cross Mot. Partial Summ. J. ("Pl.'s Br.") at 2. The Settlement Agreement also provided that:

> Plaintiff will not apply for any position with WMATA at any time in the future.
>
> \* \* \*
>
> WMATA agrees to permit the Plaintiff to accept employment or [a] consulting position with any contractor doing work for [WMATA], except if there exists an actual or apparent conflict of interest.

Pl.'s Ex. A ¶¶ 11, 13. Otherwise, the Settlement Agreement contained relatively standard provisions, including a section that forbade WMATA from retaliating against plaintiff in the future, Compl. ¶ 31, and a provision that WMATA would provide neutral reference information to plaintiff's prospective

- 2 -

employers. *Id.* ¶ 28.[1] The parties executed the Settlement Agreement on November 6, 2001. Pl.'s Ex. A ¶ 4.

Plaintiff has filed two different lawsuits related to the Settlement Agreement; the instant lawsuit, and a lawsuit focused primarily on plaintiff's claims that WMATA and its employees and agents improperly interfered with the computation of his monthly retirement pension benefit.[2]

Here, plaintiff alleges that WMATA and its employees began an intensive campaign of retaliation after he signed the Settlement Agreement. Pl.s' Ex. A ¶ 7. Specially, he contends that WMATA separated him from his staff and office equipment, threatened him with police action, and forcibly removed him from the WMATA building. *Id.* He also avouches that WMATA prevented his former colleagues from providing reference information to potential employers. Pl.'s Br. at 4. Plaintiff avers that when he threatened to go on a hunger strike outside the WMATA building to protest this treatment, WMATA and its employees attempted to have him declared "insane." *Id.*

Plaintiff's last day at the WMATA building was December 31, 2001, Defendants' Motion for Summary Judgment ("Defs.' Br.") at 2, though he remained on WMATA's payroll through March

---

[1] The Settlement Agreement contained a confidentiality clause and, as a result, defendants filed their motion under seal. It is not necessary for this Memorandum Opinion to be filed under seal: the only portions of the Settlement Agreement quoted or referenced herein are provisions that plaintiff quoted or referenced in his opposition/motion for partial summary judgment.

[2] Plaintiff recapitulates the pension allegations here, and offers them as evidence of retaliation in the instant case. The Court rejected that argument in the companion case, Memorandum Opinion, *Sharma v. Washington Metropolitan Area Transit Authority*, 03-cv-1768 (THF) at 8-10 (D.D.C. July 17, 2014), and for the same reasons articulated there it rejects them here.

31, 2002, so that he could exhaust his accrued annual leave. *See* Defs.' Ex. 5 at 6-7. Shortly thereafter, plaintiff contacted a WMATA official and offered to work for WMATA as an independent contractor or consultant. Pl.'s Ex. A ¶ 15. According to plaintiff, two of the individual WMATA defendants intervened and told the WMATA official that plaintiff could not work for WMATA as a consultant, *id.* ¶ 16, formal notification of which plaintiff received on or about May 7, 2002. *Id.* ¶ 19. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission thereafter, and initiated this lawsuit when he received a right to sue letter. *Id.* ¶ 20.

## II. Legal Standard

All parties have moved for summary judgment under Federal Rule of Civil Procedure 56. If the submissions to the Court demonstrate that there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Calhoun v. Johnson*, 632 F.3d 1259, 1261 (D.C. Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To succeed on its motion, the moving party need not produce evidence to demonstrate the lack of material facts at issue, but may instead merely point to the lack of evidence before the court to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

While a court considering summary judgment must view all of the evidence in the light most favorable to the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the non-moving party may not simply make conclusory allegations unsupported by specific evidence. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1992). Instead,

- 4 -

summary judgment is appropriate where there is no factual basis in the record to support the assertions made by the non-moving party. *See Ass'n of Flight Attendants—CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). "A party can defeat summary judgment through factual representations made in a sworn affidavit," but to do so, the party must "support[ ] his allegations . . . with facts in the record . . . or provide[ ] direct testimonial evidence." *Amiri v. Securitas Sec. Servs. USA, Inc.*, --- F. Supp. 2d ---, 2014 WL 1289449, at *2 (D.D.C. Apr. 1, 2014) (quotation marks and internal citation omitted).

### III. Analysis

#### A. Plaintiff's Breach Of Contract Claims Fail Because He Has Offered No Evidence That Defendants Breached the Settlement Agreement

Liberally construing the Complaint because plaintiff was without counsel when he initiated this litigation, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), plaintiff seems to allege that WMATA and the individual defendants breached the Settlement Agreement in three ways: first, by enforcing it before it was presented to the Court as an attachment to a draft Stipulated Order of Dismissal, Compl. ¶¶ 11, 15; second, by refusing to even consider retaining plaintiff as an independent contractor or consultant after he resigned from WMATA, *id*. ¶ 17, 22; and third, by informing plaintiff's former supervisors and staff not to provide positive employment references and verification on his behalf. *Id*. ¶ 6. Defendants maintain that the Settlement Agreement is the final, written document resolving plaintiff's prior claims, Defs.' Br. at 10, that it bars plaintiff from working directly for WMATA as an employee, contractor, or consultant, *id.* at 10-11, and that the neutral references of which plaintiff complains are both required by the Settlement Agreement and consistent with WMATA's established and standard personnel practices. *Id.* at 10.

"The first step in contract interpretation is determining what a reasonable person in the position of the parties would have thought the disputed language meant." *Malik Corp. v. Tenacity Group, LLC*, 961 A.2d 1057, 1060 (D.C. 2008). This requires examining the contract as a whole, giving a "reasonable, lawful and effective meaning to all its terms." *Debnam v. Crane Co.*, 976 A.2d 193, 197 (D.C. 2009). Absent ambiguity in the contract's language, or the presence of fraud, duress, or mutual mistake, the written language of the document governs the rights and liabilities of the parties. *Abdelrhman v. Ackerman*, 76 A.3d 883, 888 (D.C. 2013). "An ambiguity exists when, to a reasonably prudent person, the language used in the contract is susceptible of more than one meaning." *Aziken v. District of Columbia*, 70 A.3d 213, 219 (D.C. 2013). However, "contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction." *Dyer v. Bilaal*, 983 A.2d 349, 355 (D.C. 2009).

Plaintiff's assertions that the Settlement Agreement was not effective until the parties presented it to the Court and that WMATA breached it by acting prior to that date are without merit. Settlement agreements are governed by contract law. *Duk Hea Oh v. Nat'l Capital Revitalization Corp.*, 7 A.3d 997, 1013 (D.C. 2010). There is no provision in the Settlement Agreement indicating that it would not have effect until the Court formally dismissed the underling litigation and its effective date is therefore the date on which the parties signed it: November 6, 2001. As a result, to the extent plaintiff contends that defendants breached the Settlement Agreement by enforcing the provision setting plaintiff's last day of work as December 31, 2001 prior to the date on which the Settlement Agreement was presented to the Court, plaintiff's claim fails, and summary judgment in favor of defendants is appropriate.

Plaintiff's claim that WMATA breached the Settlement Agreement by interfering with his efforts to obtain positive employment reference or verification information is equally unavailing. The Settlement Agreement specifically requires that WMATA provide neutral information to plaintiff's prospective employers. Defs.' Br. at 4 n.1. Moreover, even were that not the case, plaintiff has offered no facts or evidence in the record showing that WMATA has disparaged him when contacted by his prospective employers. Indeed, he does not even dispute WMATA's contentions that it never received inquiries from any of plaintiff's prospective employers, but that even if it had, the neutral information disclosure requirement in the Settlement Agreement is standard operating procedure for all WMATA employees, as set forth in WMATA's personnel manual. *Compare* Defendants' Statement of Material Facts Not in Dispute ("Defs.' SMF") ¶¶ 12, 14 *with* Pl.'s Br. at 13-16.

Finally, the gravamen of plaintiff's breach of contract claim seems to be that WMATA breached the Settlement Agreement by refusing to consider retaining plaintiff as an independent contractor or consultant after his resignation. There are two provisions of the Settlement Agreement at issue. The first provides that "[p]laintiff will not apply for any position with [WMATA] at any time in the future" ("First Provision"). Defs.' Br. at 3. The Settlement Agreement also indicates that "WMATA agrees to permit the Plaintiff to accept employment or [a] consulting position with any contractor doing work for [WMATA], except if there exists an actual or apparent conflict of interest" ("Second Provision"). *Id.* According to defendants, these provisions, read together, indicate that plaintiff agreed not to seek employment with WMATA in the future, in any capacity, with the caveat that he was free to work for a third-party that, in turn, performed work for WMATA—in other words,

- 7 -

while plaintiff could not work for WMATA, he could work for those who worked for WMATA. *Id.* at 10-11.

Plaintiff disputes this characterization. He maintains that the two provisions do not prevent him from working as a contractor directly for WMATA. Pl.'s Br. at 22. Instead, he argues they only prohibit him from working for WMATA as a bona fide employee, and he should therefore be free to work directly for WMATA as a contractor or independent contractor without violating the terms of the Settlement Agreement. *Id.*

Reading the two provisions together, the Court concludes that plaintiff's interpretation of the Settlement Agreement is objectively unreasonable. The First Provision does not enumerate specific types of positions plaintiff may or may not hold in the future at WMATA, nor does it merely place limitations on any future professional relationship between plaintiff and WMATA. Instead, it establishes the general principle that at no point, at any time in the future, will there be a direct professional relationship between plaintiff and WMATA. The breadth of this language casts doubt on plaintiff's contention that the words "any" and "position" as used in the First Provision should be read so narrowly as to only address traditional, bona fide employment. *See* Pl.'s Br. at 24. In the Court's view, the phrasing used in the First Provision unambiguously precludes plaintiff from working directly for WMATA, either as a traditional employee or as a contractor or consultant. Plaintiff insists that a "common sense" reading of the Settlement Agreement supports his interpretation, Pl.'s Br. at 22-24, but the Court is not persuaded. Plaintiff's interpretation would require the Court to conclude that, in the context of employment, "contractor" and "consultant" are

- 8 -

not "positions"—or, perhaps, that "any" actually means something less than any. Common sense neither compels nor supports either conclusion.[3]

Plaintiff attempts to dispute this interpretation by asserting that the Settlement Agreement permits plaintiff "to work as a contractor or consultant, unless there is an actual or apparent conflict." Pl.s' Br. at 22. Here, plaintiff seems to be referring to the Second Provision, which mentions working as an independent contractor or consultant. There are two problems with plaintiff's argument. First, in referencing the Second Provision, he leaves out the operative limiting language, that plaintiff may accept employment or a consulting position "with any contractor doing work for [WMATA] . . . ." Defs.' Br. at 3. There is a distinction between working directly for WMATA as a contractor or consultant and working for a contractor that itself performs work for WMATA, and plaintiff's argument elides this distinction. Second, plaintiff's interpretation renders the Second Provision mere surplassage: if plaintiff is correct, and the First Provision, on its own, permits him to work directly for WMATA as a contractor or consultant, then there is no need for the Second Provision—which expressly permits him to work for a contractor that works for WMATA—to imply that he is free to work for WMATA "in a consulting position with any contractor." If the Court must give meaning to all the terms of the contract, Restatement (Second) of Contracts §§ 202(2), 203(a)

---

[3] Plaintiff suggests that he signed the Settlement Agreement under duress, and that he was "heavily and unduly pressured" into signing the document. Pl.'s Br. at 14. While plaintiff might not have been satisfied with the terms WMATA offered, the fact that he was represented by counsel, and that counsel and plaintiff both signed the Settlement Agreement, undercuts plaintiff's suggestion of duress.

(1981), then it cannot accept plaintiff's argument that two different provisions of the same Settlement Agreement have the same legal effect but are phrased in radically different language.

In essence, plaintiff seeks to undermine the common observation that one may not simultaneously possess and consume cake. He agreed to settle his claims against WMATA. As part of that settlement, he received certain considerations from WMATA, and, in exchange, he agreed to assume certain burdens. One of those burdens was that he retire from WMATA, and another was that he not apply for "any position with WMATA at any time in the future." Defs.' Br. at 3. Yet now, having apparently retained the benefits of the Settlement Agreement, plaintiff seeks to avoid the burdens he agreed—on the advice of his attorney—to assume. This he cannot do, and his breach of contract claim cannot survive summary judgment. For the same reasons, plaintiff's motion for partial summary judgment on this count is denied.

### B. Plaintiff's Title VII Claims Fail Because Plaintiff Has Offered No Evidence that He Experienced Discrimination or Retaliation[4]

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2012). To establish a violation of

---

[4] Plaintiff pleads both retaliation and discrimination in the same Count. Compl. ¶ 27-29. However, while he mentions race in connection with WMATA's refusal to hire him as an independent contractor, *see id*.¶¶ 16-22, he does not mention race in connection with the remaining conduct on the part of WMATA that he alleges violated Title VII. *See id.* ¶ 11, 13, 14. The Court therefore interprets the Complaint as alleging discrimination and retaliation with respect to the failure to hire element of the claim, but only retaliation with respect to the remaining allegations.

Title VII, a plaintiff must demonstrate, by a preponderance of the evidence, that the actions taken by the employer were "more likely than not based on the consideration of impermissible factors" such as race, sex, or religion. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Where the defendant proffers a legitimate, nondiscriminatory justification for the challenged actions, the analysis shifts from the prima facie case to a consideration of whether the offered justification is actually a legitimate, nondiscriminatory explanation.[5] *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494-95 (D.C. Cir. 2008). However, "[i]n evaluating whether the plaintiff has produced sufficient evidence for a reasonable jury to find that the defendant's stated reasons are pretextual, the Court may consider, among the total circumstances of the case, the underlying strength of the plaintiff's prima facie case." *Warner v. Vance-Cooks*, 956 F. Supp. 2d 129, 164 (D.D.C. 2013) (internal quotation marks and citation omitted).

Title VII also prevents employers from taking materially adverse actions against an employee or applicant for employment "because he has opposed any [unlawful] practices . . . or because he has made a charge . . . or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (2012). "To establish a prima facie case of retaliation, a

---

[5] In their opening brief, defendants argued plaintiff's Title VII claims were untimely, and that plaintiff failed to exhaust his administrative remedies with respect to the Title VII claims. In their reply brief, defendants conceded that summary judgment was inappropriate with respect to the statute of limitations argument, and the Court will therefore not consider that argument. In his opposition brief, plaintiff included exhibits indicating that he had indeed exhausted his administrative remedies, Pl.'s Ex. C, and defendants did not address that exhibit or the exhaustion issue in their reply, so the Court will not consider that issue either.

plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action." *Pierson v. Washington Metro. Area Transit Auth.*, 821 F. Supp. 2d 360, 368 (D.D.C. 2011) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006)). An employer may offer a "some legitimate, non-[retaliatory] reason" for the adverse action, *Burdine*, 450 U.S. at 252, after which the Court must assess "whether a reasonable jury could infer retaliation from all the evidence." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).

Plaintiff first alleges that defendants retaliated against him when they "[forced] him out of [the] WMATA building in an insulting manner," Compl. ¶ 28, in January 2002. *Id.* ¶ 23. In response, defendants observe that, under the Settlement Agreement, plaintiff was to retire and vacate the WMATA building on December 31, 2001. Defs.' Br. at 10.

Plaintiff offers no facts in support of his allegations, and he points to nothing in the record to buttress his claims. Even assuming that plaintiff has pleaded a prima facie case of retaliation on the basis of these allegations, summary judgment is appropriate where a non-moving party offers nothing but conclusory allegations, *see Ass'n of Flight Attendants—CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009), and it is therefore appropriate here.

Even if plaintiff were to offer facts showing that he had been forcibly removed from the WMATA building in the manner he described, the removal still would not sustain—or even support—a claim for retaliation. The Settlement Agreement clearly provided that plaintiff's last date on the WMATA premises would be December 31, 2001. Defs.' Br. at 2. Then, in January 2002,

- 12 -

WMATA took away from plaintiff his staff and office equipment and barred him from his former workplace. Compl. ¶ 11. Plaintiff dresses this as retaliation, but it was exactly and precisely what was countenanced by the Settlement Agreement. He had no right to access the WMATA building (or its office equipment, or its records, or his former staff) after December 31, 2001, and it can scarcely be considered retaliation for WMATA to have refused to permit his presence at its premises after that date, and to have him removed from the building should he return in the future.

Next, plaintiff asserts that on or about April 3, 2002, he offered his services to WMATA as an independent contractor and that on or about May 7, 2002 WMATA informed him that he was not allowed to work directly for WMATA as an independent contractor. He claims that this refusal to retain him constitutes both discrimination under Title VII and retaliation under Title VII.

Plaintiff's claim fails, because Title VII does not protect independent contractors. *Spirides v. Reinhardt*, 613 F.2d 826, 829-30 (D.C. Cir. 1979); *see Khaksari v. Chairman, Broad. Bd. of Governors*, 2011 WL 5514018, at *2 (D.C. Cir. Oct. 28, 2011). To determine whether an individual is an independent contractor or an employee is usually a "relatively open, fact-intensive inquiry," *Konah v. District of Columbia*, 815 F. Supp. 2d 61, 70 (D.D.C. 2011), that can involve the application of as many as twelve factors. *Ghori-Ahmad v. United States Com'n on Intern. Religious Freedom*, 969 F. Supp. 2d 1,6, 6 n.3 (D.D.C. 2013). Such an analysis need not be taken here; while a litigant may plead in the alternative, and even argue to a jury in the alternative, *see McNamara v. Picken*, 950 F. Supp. 2d 125, 128-29 (D.D.C. 2013), plaintiff has explicitly stated that he sought to work for WMATA as a "consultant or contractor," Pl.'s Br. 22, and he never actually argues otherwise. *Id.* 24. Because he sought to work for WMATA not as an employee but as a contractor,

- 13 -

he was not an applicant for employment within the meaning of Title VII and his discrimination claim fails for that reason.

Even if the Court were to hold that plaintiff was an applicant for employment within the meaning of Title VII, he has offered no facts or evidence that would justify sending his claim to a jury. Attached to his brief plaintiff offers his Equal Employment Opportunity Commission complaint and a series of complaints he lodged with the Federal Transit Administration of the United States Department of Transportation, Pl.s' Ex. C, but these merely rehash the same conclusory allegations presented in the Complaint. Unsupported as it is by anything in the record, plaintiff's claim that WMATA's refusal to retain him violated Title VII cannot survive summary judgment.

Finally, plaintiff appears to claim that WMATA retaliated against him by not issuing positive employment verification or reference information to plaintiff's prospective employers. This claim fails. Defendants have stated—and plaintiff has not disputed—that they did not actually give any references on behalf of plaintiff. *Compare* Defs.' SMF ¶ 12 *with* Pl.s' Br. at 14-16. Nor does plaintiff dispute defendants' assertion that it is standard WMATA policy to provide a prospective employer of a former WMATA employee with limited, neutral employment verification or reference information. *Compare* Defs.' SMF ¶ 14 *with* Pl.'s Br. at 14-16.

Plaintiff has not offered any facts, any testimony, or any evidence in the record to support his claims of discrimination and retaliation in violation of Title VII, let alone offered "sufficient evidence for a reasonable jury to find that [defendants'] asserted non-retaliatory reason was not the actual reason" for removing plaintiff from WMATA's building, for refusing to retain him as an independent contractor or consultant, or for declining to provide him with positive employment verification

information. *McGrath v. Clinton*, 666 F.3d 1377, 1383 (D.C. Cir. 2012). Summary judgment in favor of defendants on plaintiff's Title VII claims is therefore appropriate.

### C. Plaintiff's Tort Claims Are Barred By the Doctrine of Sovereign Immunity.

In Count III, plaintiff asserts a claim for tortious interference against WMATA and two of the individual WMATA defendants, arguing they interfered with the benefits and considerations guaranteed to him by the Settlement Agreement. Defendants argue that plaintiff's claims are precluded by the doctrine of sovereign immunity.[6]

The Eleventh Amendment to the Constitution bars suits by private parties against a state agency, absent a valid abrogation of immunity by Congress or waiver of immunity by the state or state agency. *See Alden v. Maine*, 527 U.S. 706, 728, 755-756 (1999). Section 80 of the Compact creating WMATA "waives [WMATA's] sovereign immunity for torts committed in the conduct of any proprietary function, while retaining immunity for torts committed by its agents in the performance of a governmental function." *Beebe v. Washington Metro. Area Transit Auth.*, 129 F.3d 1283, 1287 (D.C. Cir. 1997) (quotation marks and internal citation omitted). The immunity determination "often turns on whether the activity is 'discretionary' or 'ministerial' . . . ." *Id*. If the

---

[6] As set forth below, plaintiff's tort claims are barred by the doctrine of sovereign immunity. Even if they were not, summary judgment would still be appropriate based on the principle that tortious interference claims arise when a third party interferes with a contract or relationship already established between other parties. *E.g.*, *Hunt v. District of Columbia*, 66 A.3d 987, 993 (D.C. 2013). Here, the Settlement Agreement constituted a contract between WMATA and plaintiff, and WMATA and its agents could not have tortiously interfered with a contract to which they were parties.

activity is discretionary and is "grounded in social, economic or political goals," then the activity is governmental and is shielded by sovereign immunity. *Id*.

Defendants point to a line of cases in which Courts have held that employment, salary, and benefits decisions made by WMATA are the sort of decisions to which the Compact's retention of sovereign immunity applies. *See Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) (" . . . the hiring, training, and supervision of WMATA personnel are governmental functions"); *Lombard v. Washington Metro. Area Transit Auth.*, No. 01-2475 (D.D.C. Feb. 21, 2003) (individual WMATA defendants enjoyed sovereign immunity in contract and tort case alleging that WMATA incorrectly calculated plaintiff's benefits eligibility and provided plaintiff an incorrect retirement estimate).

Plaintiff makes two arguments in response. First, he cites to *Griggs v. Washington Metropolitan Area Transit Authority*, 232 F.3d 917 (D.C. Cir. 2000) for the proposition that the sovereign immunity enjoyed by WMATA's employees is not absolute. Essentially, he argues that, because the WMATA employee involved in *Griggs* did not retain his immunity, the WMATA employees in this case must necessarily not retain it, but that argument ignores the fact that *Griggs* concerned an employee's purely ministerial functions, to which sovereign immunity does not attach, *id.* at 921-22, while this case involves WMATA's administration of its personnel system, which courts have repeatedly held is the sort of governmental activity to which sovereign immunity does attach. *E.g.*, *Burkhart*, 112 F.3d at 1216.

Next, plaintiff turns to *Beebe*, which he cites for the proposition that officials who "exceed the outer perimeters of their responsibilities, and act manifestly beyond their line of duty" do not enjoy

sovereign immunity. *Beebe*, 129 F.3d at 1289. Plaintiff alleges that the WMATA defendants here acted beyond their line of duty, but he offers no facts or evidence in support of those claims. He recounts a litany of harms he suffered, but offers nothing to substantiate them. Even if the Court accepted plaintiff's legal theories, in the absence of even a scintilla of evidence that such conduct occurred, plaintiff's tort claims cannot survive summary judgment, and defendants are entitled to summary judgment on those claims.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court will GRANT defendants' Motion for Summary Judgment [ECF No. 34] in its entirety and will DENY plaintiff's cross-motion for partial summary judgment [ECF No. 40]. An appropriate order will accompany this Memorandum Opinion.

July 17, 2014

                                               Thomas F. Hogan
                                    Senior United States District Judge